[No. 9,293. Department Two. — July 26, 1884.]

ALBERT E. ROSS, RESPONDENT, *v.* A. B. EVANS, APPELLANT.

EJECTMENT — ADVERSE POSSESSION — PAYMENT OF TAXES. — Where a defendant in ejectment relies upon title acquired by adverse possession after the passage of the Act of April 1, 1878, amending section 325 of the Code of Civil Procedure, he must show that he or his grantors have paid all taxes levied and assessed upon the land subsequent to the passage of the act.

ID. — FINDINGS. — In such a case the court should find whether any taxes were levied and assessed upon the land after the passage of the act.

ID. — RENTS AND PROFITS — POSSESSION BY CONSENT OF OWNER. — When a person has occupied land with the acquiescence and consent of the owner, no rents and profits can be recovered in ejectment during the period of such acquiescence and consent.

APPEAL from a judgment of the Superior Court of the county of Lassen.

The facts are stated in the opinion.

*E. V. Spencer,* for Appellant.

*J. D. Goodwin,* for Respondent.

THORNTON, J. — In this cause the findings do not pass on all the material issues. The court finds an adverse possession by defendant and his grantors, from 1862 to the trial of the action in September, 1883, against every one except the United States, of the lands for the possession of which it awards judgment to the plaintiffs. It also finds that these lands were public lands in 1862, for a portion of which a patent of the United States was made to the plaintiff in 1875, and for the remaining portion he received a patent from the same in 1879, and that plaintiff's cause of action was not barred by the Statute of Limitations. This conclusion could only be reached on the ground that the defendant had not paid the taxes on the lands, as required by the Act of April 1, 1878, amending section 325 of the Code of Civil Procedure. (See Amd'ts Codes 1877–78; Code Civ. Proc. Newmark's ed. 1883, § 325.) The language of this act is that " in no case shall adverse possession be considered as established under the provision of any section or sections of this Code, unless it shall be shown that . . . . the party or persons, their predecessors and grantors, have paid all the taxes, State, county, or municipal, which have been *levied and assessed* upon such land."

As to the matter of taxes and their payment, the court finds that these lands have never been assessed to defendant or his grantors since the year 1877, nor have they paid the taxes thereon; that since the year 1877, defendant and his grantors have paid all the taxes, State, county, and municipal, that have been assessed to them on any lands owned by them in Lassen County.

If any taxes were *levied and assessed* (such are the words of the statute) on the lands in controversy, after the Act of 1878 went into effect, the defendant must have shown that he or his grantors paid them, to establish his adverse possession. It is immaterial to whom they were assessed. Whether assessed to him or some other person, if he does not show that he or his grantors have paid them, he cannot make out his adverse possession. It may be that if such taxes were paid by some one else, defendant would only be called on to prove that fact; *perhaps*, in such case, he would be relieved from paying them to make out his defense. But as to this we decide nothing, as the question is not before us.

It will not be enough for defendant to prove that he has paid all the taxes levied and assessed on the land owned by him in the county where the land in suit is situated; for the defense of the Statute of Limitations admits that he does not own the land unless by reason of his adverse possession, and the adverse possession is to be made out by this showing.

The defect in the findings is that it is not made to appear by them whether any taxes were levied and assessed on the land in suit. If none were assessed, of course he is not bound to prove that he paid them. But, as said above, if the taxes were levied on the land and assessed to any one, defendant must, to make out the defense set up, show that he or his grantors paid them.

Although, as a general rule, the law raises the presumption that public officers have done their duty, and therefore we must here indulge the presumption that the assessor did his duty and duly assessed the land, we do not think that this is a proper case to indulge such presumption. We should not, in our view, determine the defense set up here and adversely to it, upon a presumption that an officer has done that which he may not have done. We think there should have been a finding whether any taxes were levied and assessed on these lands after the Act of 1878 went into operation, and during the period of adverse possession.

The lands just referred to are those for which a patent was issued to the plaintiff in 1875. The action having been brought in May, 1883, the action to recover the lands patented to the plaintiff in 1879 could not have been barred. There was not five years between the date of the patent in 1879 and the commencement of the action in 1883. The lands as to which a finding is required in the matter of taxes, are the southeast quarter of the northwest quarter, and the northeast quarter of the southwest quarter, of section two, township twenty-four north, range 17 east, Mount Diablo Meridian. In regard to the other lands embraced in the patent of 1879, as the bar of the statute could not have been complete when the action was begun, a finding as to taxes is entirely unnecessary.

The plaintiff recovered judgment for mesne profits for $216.90, at the rate of $72.30 per annum, for the three years

next preceding the commencement of the action. It is contended by appellant that on the facts found this was error.

It is found "that in the year 1860 defendant and his grantors located and took possession of a large tract of public land of the United States, embracing the land described in plaintiff's complaint, and commenced enclosing the same. While so engaged they sold plaintiff a portion of their said possessory claim, and by consent and mutual agreement of defendant and his grantors on the one side, and plaintiff on the other, a division line was agreed upon, and a substantial division fence built thereon. This division fence was completed in 1862, and has been maintained up to the trial of this action.

"That said fence was recognized and acquiesced in as the division fence between plaintiff and defendant until the spring of 1883, at which time plaintiff attempted to change said fence so as to make it conform to the United States survey lines and include the land in dispute, but was forbidden and prevented from doing so by defendant.

" That said fence completed the enclosure of the said possessory claim of defendant and his grantors.

" That since 1862, defendant and his grantors have possessed and occupied all the said land within their enclosure, and the defendant still does."

It is further found that the claim of ownership of defendant was acquiesced in by plaintiff until the spring of 1883, as above stated.

It thus appears that the possession of defendant of the land in dispute, was with the consent and acquiescence of the plaintiff under an agreement between the parties, and that defendant's claim of ownership of these lands was also acquiesced in by plaintiff. We cannot say, then, that the latter is entitled to recover rents and profits while such consent and acquiescence continued. It would be inequitable to allow the recovery of such rents and profits. The possession of defendant was consented to, and there was no understanding that anything should be paid for it. The action for mesne profits is a liberal and equitable action, and will allow of every kind of equitable defense. (*Murray* v. *Gouverneur*, 2 Johns. Cas. 438. See also

*Ewalt* v. *Gray*, 6 Watts, 428 ; *Alexander* v. *Herr*, 1 Jones, 537 ; *Davis* v. *Doe*, 2 Cart. 599.)

This possession under the agreement was acquiesced in by plaintiff until some time in the spring of 1883, when he attempted to change his fence so as to include the land in dispute, which was prevented by defendant. This put an end to the consent and acquiescence, and from that time plaintiff was entitled to recover mesne profits. The mesne profits were allowed for a much longer period. The action was brought on the 21st of May, 1883. The mesne profits were allowed for a period of three years before the action was commenced, when they should have been allowed only from the day, in the spring of 1883, when the possession by acquiescence was put an end to and the consent withdrawn.

It follows from the foregoing that the judgment must be reversed. It is so ordered and the cause remanded to the court below for a new trial, in accordance with the views herein expressed.

MYRICK, J., and SHARPSTEIN, J., concurred.

Hearing in Bank denied.