[No. 19278. Department Two.—February 24, 1894.]

E. J. BALDWIN, APPELLANT, v. JOHN H. TEMPLE, RESPONDENT.

ADVERSE POSSESSION—PAYMENT OF TAXES—BURDEN OF PROOF.—When the plaintiff in an action of ejectment proves a paper title his case is made out, and if the defendant relies upon adverse possession under the statute of limitations he must prove either that no taxes were levied or assessed upon the land, or that he paid all taxes which were levied and assessed thereon.

ID.—FINDING AGAINST EVIDENCE.—A finding that the property in controversy was not assessed for taxes, for a specified year, is against the evidence, where it appears that the land assessed by boundaries necessarily included the land in controversy, although there is no evidence that the tract claimed by the defendant was assessed by any separate or specified description in that year.

ID.—DESCRIPTION OF LAND—QUANTITY—BOUNDARIES.—Where the whole of a ranch is assessed, the quantity of land expressed in acres is mere description, and does not control the more certain description by boundaries, but must yield to boundaries where they do not agree.

ID.—PAYMENT OF TAXES BY OWNER—PRESUMPTION.—The payment of taxes by the record owner adds nothing to his title, but it excludes any presumption that it was assessed to, or paid by, the adverse possessor.

ID.—LEASE TO POSSESSOR—ADMISSION—ADVERSE POSSESSION.—Where the owner of land accepts a lease from another it does not destroy his title to the land; but where the lessee is in possession without title it is an admission of the fact, and may be used as evidence tending to show that he did not claim to hold the land adversely to the party from whom he accepted the lease.

ID.—PAROL GIFT—ADVERSE POSSESSION.—A parol gift of land from the mortgagor, though invalid as against the mortgagee, is a sufficient basis for the acquisition of a right by adverse possession.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial.

The facts are stated in the opinion.

*Wells, Monroe & Lee*, for Appellant.

As the defendant neither proved what taxes were levied and assessed upon the lands, or that no taxes were levied and assessed, no title by adverse possession was proven. (*Reynolds* v. *Willard*, 80 Cal. 605.)

*J. Brousseau*, and *Brousseau & Hatch*, for Respondent.

The tax receipts showing payment of taxes by plaintiff add nothing to his rights as against defendant's pos-

session, and do not prove that defendant did not pay the taxes assessed on the property in question. (*Davis* v. *Baugh*, 59 Cal. 579.) It does not appear from those receipts that the parcel in controversy was included in those parts of the rancho upon which plaintiff paid taxes. It is unnecessary for defendant to show that he has paid any taxes for five years, from January 1, 1874, to make his adverse possession effective as against plaintiff's claim. (*Heilbron* v. *Water Ditch Co.*, 75 Cal. 123; *Coonradt* v. *Hill*, 79 Cal. 591.) The amendment of section 325 of the Code of Civil Procedure, 1878, is not retroactive. (*C. P. R. R. Co.* v. *Shackelford*, 63 Cal. 261.) Defendant's possession was such up to the 1st of January, 1879, that he could maintain his action against plaintiff to quiet his title. (*McCormack* v. *Silsby*, 82 Cal. 72.) And such possession need not have been for the five years next preceding the commencement of the action. (*Cannon* v. *Stockman*, 36 Cal. 535.) And having then perfect title as against plaintiff and his grantor, and having remained in actual and exclusive possession up to the commencement of this action under claim of absolute ownership, such title cannot be affected by any payment of taxes on the part of plaintiff. (*Davis* v. *Baugh*, 59 Cal. 579.) Defendant is not estopped from denying plaintiff's title by the pretended lease as it did not prove the relation of landlord and tenant, the defendant being then in possession. (*Caldwell* v. *Center*, 30 Cal. 540; 89 Am. Dec. 131; *Tewksbury* v. *Magraff*, 33 Cal. 237; *Franklin* v. *Minda*, 35 Cal. 558; *Pacific M. L. Ins. Co.* v. *Stroup*, 63 Cal. 153. See *Furlong* v. *Cooney*, 72 Cal. 322; *Frick* v. *Sinon*, 75 Cal. 337.) In addition to the evidence of title in defendant by virtue of his adverse possession, he has established title by virtue of the gift from his father, the common source of title, under which the equitable title passed to defendant as against the plaintiff and his grantors, and defendant could maintain his action against the donor or grantees for specific performance and obtain a deed conveying the legal title. (*International Bank of St.*

*Louis* v. *Fife*, 95 Mo. 118; *Potter* v. *Smith*, 68 Mich. 212; *Dawson* v. *McFadden*, 22 Neb. 131; *Anson* v. *Townsend*, 73 Cal. 417; *Bakersfield T. H. Assn.* v. *Chester*, 55 Cal. 102.)

HAYNES, C.—The plaintiff brought ejectment. The defendant answered, and also filed a cross-complaint to quiet title to the demanded premises, and plaintiff answered the cross-complaint. The cause was tried by the court without a jury. The findings were in favor of the defendant, and judgment was entered thereon. Plaintiff moved for a new trial, which was denied, and this appeal is from the judgment, and from the order denying a new trial.

No question is made that the plaintiff has the legal title, unless the defendant has acquired title by adverse possession; nor is there any question but that the defendant was in the exclusive possession of the demanded premises a sufficient length of time to give him title. The question controverted touching the adverse possession of defendant is as to whether taxes were levied and assessed upon the demanded premises for the year 1878. Upon this point the finding of the court is as follows: "That said property was not assessed for taxes for the year 1878."

A general statement of the facts of the case is necessary to a clear understanding of the question above indicated.

In 1874 F. P. F. Temple was the owner of the undivided one-half of the Rancho La Merced and the Rancho Potrero de Felipe Lugo, which adjoin each other, the Merced lying on the westerly side of the last-named ranch. The defendant is the son of F. P. F. Temple. The father, it is found, made a survey of a tract of land containing about seventy-five acres, lying partly in each of the said ranchos, which seventy-five-acre tract embraces the lands in controversy in this action. January, 1874, F. P. F. Temple made a parol gift of the seventy-five acre tract to the defendant. That

part of the tract which is in controversy here is a small parcel, the quantity of which does not clearly appear, but containing probably from three to five acres, belonging to the Merced grant, and lying on the westerly side of the line separting the two grants.

It is contended by appellant that the finding above quoted is not justified by the evidence; but that, on the contrary, the evidence shows that it was included in the levy and assessment of taxes upon the Rancho Merced for the year 1878, and each subsequent year.   The finding, of course, concedes that the defendant did not pay the taxes upon the lands in controversy for that year, none being assessed; so that the question is as to whether they were in fact assessed.   The defendant offered no evidence tending to show whether or not taxes were assessed upon the demanded premises for that year.   The plaintiff, however, gave evidence tending to prove that these premises were assessed as a part of the Rancho La Merced for each year from 1876 down to and including the year 1887.   The only ground upon which respondent controverts this statement is based upon the various statements as to the number of acres contained in said rancho.   This ranch was patented by the United States to F. P. F. Temple and Juan M. Sanchez in 1872, and is there stated to contain 2,363.75 acres.   On December 2, 1875, Temple, Sanchez, and Workman mortgaged this rancho with other property to the plaintiff, the mortgage describing it as containing the same number of acres mentioned in the patent.   This mortgage was afterwards foreclosed, and in all the proceedings for foreclosure and sale the same number of acres is stated.   Defendant was not a party to the foreclosure proceedings.

In 1876 F. P. F. Temple failed, and made an assignment to Freeman and Spence, and that year an undivided one-half of the ranch was assessed to Sanchez, and the other half to Freeman and Spence, the number of acres in the ranch being put down as 2,324.   In 1877 the same number of acres appears in the assessment.

In 1878 it was assessed as follows: " Geo. E. Long, assignee of F. P. F. Temple, an undivided one-half interest in 2,324 acres of the Rancho La Merced, situate in the county of Los Angeles, and bounded north by Rancho Potrero Grande, east by Potrero de Felipe Lugo, south by San Gabriel river, west by Rancho San Antonio, being 1,162 acres." " Paid." And for the same year to " Juan M. Sanchez, 1,152 acres of land, being an undivided one-fourth interest of the Rancho La Merced, county of Los Angeles, bounded north by Rancho Potrero Grande, east by Potrero de Felipe Lugo and San Gabriel river, west by Repetto." " Paid."

The ranch was similarly described in the assessment for each year up to 1880. In 1880 it was described by sections and fractional sections in the different townships, the number of acres being set town to each description, and the whole stated to be 2,385 acres, and was assessed to Richard Garvey, receiver.

In 1881 it was assessed to E. J. Baldwin, the plaintiff, as follows: "Also 2,335 acres of land in Rancho La Merced, being the whole of said rancho (except 50 acres sold by Wm. Alvord to Mrs. A. M. W. de Temple, as per deed recorded )," etc., following with a particular description by section and fractional sections, with the quantity in each description. All the subsequent assessments follow the description given in the assessment of 1881.

The tract, containing about 75 acres, claimed by defendant is designated in the record as the " John Temple Homestead." No description of the homestead as assessed for taxation appears in the record, nor is there any evidence that the homestead was assessed by any description in 1878, whilst the finding is that the part in dispute was not assessed. The discrepancy in the number of acres appearing in different assessments and that stated in the patent is not material in view of the description given of the ranch by its boundaries, no part of it being excepted until after the conveyance of the 50 acres to Mrs. Temple. Besides, there was evidence tending to prove that no part of the Merced ranch

had ever been assessed to the defendant except 12¼ acres assessed in 1884 to John H. Temple " as guardian of Maggie B."

In *Reynolds* v. *Willard*, 80 Cal. 605, it was held that when the plaintiff in an action of ejectment proves a paper title his case is made out; and if the defendant relies upon adverse possession under the statute of limitations he must prove either that no taxes were levied and assessed upon the land, or that he paid all taxes which were levied and assessed thereon. (See, also, concurring opinion in *McGrath* v. *Wallace*, 85 Cal. 629.)

If that decision is followed, the burden was upon defendant of proving that the land was not assessed. He offered no evidence tending to prove that fact, nor is there any evidence in the record which in any manner conflicts with that offered by plaintiff from the records showing the assessment of the Merced ranch for each year, and the payment of the tax assessed thereon.

It is contended by respondent that the discrepancy between the quantity of land contained in the Merced ranch, as shown by the patent and the quantity as stated in the assessment of 1878, tends to show that it was not assessed. The evidence, however, shows that the parcel of land in controversy here is the only part of the Merced ranch claimed to be owned by defendant, and this part contains but a small quantity of land, variously stated at from two to five acres, which would not at all account for the difference between the quantity stated in the patent and that stated in the assessment to the assignees of Temple. Besides, the description in the assessment to the assignee of Temple purporting to include the whole ranch, it rested upon defendant to show that that assessment did not include the four or five acres in controversy. The assessment did not refer to the fence which cut a few acres off from the remainder of the ranch, but referred to the line between the two ranches. The case is, therefore, within *McDonald* v. *Drew*, 97 Cal. 266.

The land assessed being bounded on the east by the

CI. CAL.—26

Potrero de Felipe Lugo grant, necessarily included the land in controversy. Even if it be conceded that the whole of the Merced ranch was not assessed, there is nothing to indicate that this particular part was omitted. But the whole ranch was assessed. The quantity of land expressed in acres is mere description, and does not control the more certain description by boundaries, but must yield to boundaries where they do not agree. (*Stanley* v. *Green*, 12 Cal. 164, 165; *DeArguello* v. *Greer*, 26 Cal. 632; *Tappendorff* v. *Downing*, 76 Cal. 170.)

There is no claim that defendant paid the taxes since 1878, or at all, upon any part of the Merced ranch by that description, but, on the contrary, it is shown that the land was assessed and the taxes paid by others every year down to the commencement of this action. As counsel for respondent suggests, the payment of the taxes by the plaintiff added nothing to his title, but it excludes any presumption that it was assessed to or paid by defendant.

The finding in question is not justified by the evidence. Other questions are presented by the record which will probably be presented upon a new trial and which will, therefore, be briefly noticed. On the 8th of February, 1881, the plaintiff called the attention of the defendant to the fact that a portion of the land he had inclosed belonged to the Merced grant. The defendant replied that he did not wish to have any trouble about it, and thereupon the plaintiff executed to the defendant a lease of the premises in question for the period of one year for the annual rental of one dollar, which lease the defendant accepted. At the expiration of this lease the defendant refused to accept another lease, saying that he did not desire to lease his own property. It is quite true that where the owner of land accepts a lease from another it does not destroy his title to the land. Where, however, the lessee is in possession without title, it is a pregnant admission of the fact, and may be used as evidence tending to show that he did not claim to hold the land

adversely to the party from whom he accepted the lease. Respondent, however, is right in his contention, that being in possession at the time the lease was made, his right to maintain an action without first surrendering the possession is not affected by the lease, his prior possession not having been obtained from the lessor. Whether defendant paid the rent is immaterial.

Any question arising upon the fact that defendant's possession was based upon a parol gift is not important to be considered, inasmuch as the gift, though invalid as against the mortgagee, was nevertheless a sufficient basis for the acquisition of a right by adverse possession, so that defendant's right is unaffected by the making of the mortgage and plaintiff's title under it, if the defendant had acquired title by adverse possession.

We advise that the judgment and order appealed from be reversed and a new trial granted.

.VANCLIEF, C., and BELCHER, C., concurred.

For the reasons given in the foregoing opinion it is ordered that the judgment and order appealed from be reversed and a new trial granted.

DE HAVEN, J., and FITZGERALD, J.

McFARLAND, J., concurring.—I concur in the judgment. The question does not arise here whether one relying on adverse possession must prove, negatively, that no taxes were levied on the land in contest. It was held that he must do so in *Reynolds* v. *Willard*, 80 Cal. 605, by a divided court; but I do not consider that one case as establishing the doctrine. If we are to stand by the *decisions*—why, they are the other way. In the opinion of the majority of the court in *Reynolds* v. *Willard*, the case of *Ross* v. *Evans*, 65 Cal. 439, *is* referred to, and treated as not necessarily determining the point; but the two later cases of *Heilbron* v. *Water Ditch Co.*, 75 Cal. 123, and *Oneto* v. *Restano*, 78 Cal. 374, are not in any way referred to or mentioned. Yet in these two last-named cases, both in Bank, the point was squarely de-

cided the other way. In *Ross* v. *Evans*, 65 Cal. 439, while the point was perhaps not clearly involved, still the opinion of the department, delivered by Mr. Justice Thornton, states views inconsistent with those afterwards expressed in *Reynolds* v. *Willard*, 80 Cal. 605. However, in *Heilbron* v. *Water Ditch Co.*, 75 Cal. 123, the point was necessarily involved, and the court held that the point of nonpayment of taxes was "sufficiently answered by the fact that it does not appear that any taxes were ever levied or assessed upon" the property there involved; and there was no dissent in the court in Bank upon the point, although Mr. Justice Patterson dissented upon another point. But in *Oneto* v. *Restano*, 78 Cal. 374, the court in Bank, without any dissent, took occasion to express its views fully on the subject, and said: "It is argued for the plaintiff that, in order to re-cover upon this ground, the defendant must show that he paid all the taxes which have been assessed. It has been held, however, that if no taxes are found to have been assessed, it need not be found that the party claiming by adverse possession has paid taxes. (*Heilbron* v. *Last Chance Co.*, 75 Cal. 117.) In other words, the requirement as to the payment of taxes does not apply when none have been assessed to anybody. And the inference is, that the burden of showing that none have been assessed is not upon the claimant by possession. That is a negative which he is not required to prove. If there has been an assessment it is for the other party to show the fact. This is the rule which convenience requires. For it is an easy matter to show that an assessment has been levied, but a difficult one to show that none have been levied for a series of years." This case was not in any way called to the attention of the four justices who rendered the decision in the subsequent case of *Reynolds* v. *Willard*, 80 Cal. 605; and, under these circumstances, I adhere to the decisions, and not to the one isolated case last above mentioned.